[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM
This action alleges unpaid wages. On March 2, 1988, the plaintiff entered into a written employment agreement with the named defendant. He was hired as a Development Coordinator with a starting date of February 25, 1988 for a term of six months ending August 25, 1988. Compensation was to be "$1,600/month for the first six months. After six months, if we are pleased with your performance, you will receive a lump sum payment of $18,000 on August 25, 1988. Beginning August 26, 1988, salary will increase CT Page 6098 to $9,000/month. If desired, we will advance you an additional $18,000 on August 25, 1988 (for your use as part of a downpayment on a house). This advance will be repaid at $3,000 per month for six months as a payroll deduction from 8/26/88 to 2/25/89". The plaintiff was paid at the agreed rate of $6,000 per month and at the end of the six months he purchased a house from another corporation which was also controlled by the named individual defendants and at the closing, he was given a credit toward the purchase price of $18,000. That $18,000 was never repaid so I conclude that it was accepted by all concerned as constituting the first $18,000 mentioned in the agreement. On August 3, 1988, the plaintiff and the named defendant entered into another written employment agreement for a term ending February 28, 1989 with compensation to be "$6000/month. After six months, if we are pleased with your performance, you will receive a lump sum payment of $18,000 on February 28, 1989". This agreement clearly superseded the provision of the February 25 agreement with respect to the increase to $9,000 per month. The plaintiff was paid the $6,000 per month but Keith Mahler, a co-defendant and president of the named defendant, denied that any bonus was due. The plaintiff threatened to quit if the bonus was not paid. Responsive to that threat I. Kenneth Mahler, another co-defendant and an officer of the corporation, telephoned the plaintiff, told him his performance was satisfactory but there was a cash flow problem, and requested that he accept $7,500 on account, and remain on the job. The plaintiff agreed, the $7,500 was paid, and he continued to work. The balance of $10,500 has never been paid. As the second six month period expired, the plaintiff and the named defendant entered into another six month agreement. This was not reduced to writing but again called for $6,000 per month and at the end another bonus of $18,000. Although there is a dispute over the terms of the bonus, I find as a fact that there was an additional condition that work on a project that was in progress had to be completed by a deadline, and that condition was not met. Accordingly, I conclude that the third bonus did not become payable.
In a post trial memorandum, the attorney for Sullivan alleges that although he worked during July and August, 1989, he was not paid for either of those months. The complaint makes no such allegation and my notes do not indicate any persuasive evidence that such was the case. Therefore, I conclude that there are unpaid wages of the balance due on the second bonus of $10,500. The failure to pay clearly violates Connecticut General Statutes31-72 and therefore Mr. Sullivan is entitled to have that figure doubled to $21,000 with statutory interest from February 28, 1989. He is also entitled to reasonable attorney's fees, and I reserve jurisdiction to determine that amount. I have no problem in finding Progress Builders, Inc. liable. CT Page 6099
The complaint is also directed against Keith Mahler and I. Kenneth Mahler as individuals, it being alleged as to each of them that they "specifically caused defendant Progress Builders, Inc. to withhold from plaintiff the bonus wage". There is no question but that either of them had the power as officers of the corporate defendant to direct the corporation either to make that payment or not. There is no guidance from the appellate level as to whether or not corporate officers can be held liable for failure of a corporation to pay wages, and there is a split on the question at the trial level. In Grossman v. Centaur Sciences, Inc., 14 CLT 40, 760 (October 10, 1988), Cioffi, J. held on public policy grounds that if they caused wages to be withheld, they can be held personally liable, and that view was adopted by Byrne, J. in an earlier ruling in this case on the Mahlers' motion for summary judgment. In Hutto v. Corroon Black of Connecticut, Inc. et al, 3 CLR #13, 434 (March 25, 1991, Mottolese, J. denied personal liability on the ground that the corporate officers were not employers and the statute gave a remedy only against employers. I hesitate to hold corporate officers personally liable for unpaid wages because this would impose liability if a corporation went broke.
Although not alleged in so many words in the complaint, the action was tried by both sides on the plaintiff's attempt to pierce the corporate veil and a broad reading of the causation allegation would encompass such a result. If that be not so, the plaintiff is granted permission to amend the complaint to conform to the proven facts. Progress Builders was engaged in the construction of housing for a number of other corporations which were formed to develop a number of different projects. The only stockholders and officers of each of the corporations were the two Mahler defendants and members of their immediate families. All shared common office space. They shared a common bookkeeper. Expenses were allocated among them in a mish mash. Some personal expenses of Keith Mahler were paid out of Progress Builder's funds. It is particularly notable that the first $18,000 bonus was paid by a credit given by one of these other corporations to Sullivan in the purchase by him of a dwelling unit owned by that corporation. No corporate formalities such as directors' or stockholders' meetings were observed and there was a paucity of minutes kept. The salary of the common bookkeeper for all of the corporations was paid by Progress Builders. It never did construction work for any entities other than the Mahler dominated project corporations. The two Mahlers were in full control not only of Progress Builders, but of each of the satellite corporations. Clearly Progress Builders was an instrumentality of theirs within the guidelines of Zaist v. Olson, 154 Conn. 563. Despite the construction of numerous projects for the satellites in a period when the real estate market was booming, Progress Builders was kept in a financially precarious position so that it CT Page 6100 was unable to pay its debts and specifically to pay the plaintiff in full. I conclude that there is ample evidence that Progress Builders was simply and intentionally nothing but the alter ego of the Mahlers and that they are personally liable for this debt.
Judgment may enter for the plaintiff against all three defendants in accordance with the foregoing.
J. HEALEY, STATE TRIAL REFEREE